William Samaha v. Commissioner.
Samaha v. Commissioner
Docket No. 79066.
United States Tax Court
T.C. Memo 1960-203; 1960 Tax Ct. Memo LEXIS 80; 19 T.C.M. (CCH) 1077; T.C.M. (RIA) 60203; September 30, 1960
*80 William Samaha, pro se, 200 Rhode Island Avenue, N.E., Washington, D.C. Cornelius C. Shields, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in Federal income taxes against petitioner for the year 1957 in the amount of $321.84. In his return for that year petitioner reported adjusted gross income in the amount of $6,487.19 and listed itemized deductions totaling $1,886.56, including medical expenses in the net amount of $1,580.14 ($1,774.76 less 3 per cent of adjusted gross income, or $194.62). As part of such medical expenses petitioner included $366 as representing the cost of two trips to Florida, $716.64 as representing motel expenses at Sarasota, Florida, and $250 representing "Gifts for Dr. W. P. Brownell-Prof Services." Respondent disallowed the last three items and allowed petitioner a standard deduction in the amount of $648.72, representing 10 per cent of petitioner's gross income. In his petition petitioner alleged error with regard to the disallowance above noted, but at the trial petitioner conceded that the amount of $250 representing "Gifts for Dr. W. P. Brownell" was not deductible. Therefore *81 the question in this case is whether the deductions taken by petitioner on account of two trips to Florida and on account of motel expenses at Sarasota, Florida, are deductible in whole or in such amounts as would make the total allowable itemized deductions exceed the standard deduction which respondent allowed. Findings of Fact The parties have stipulated a few of the facts. We find them to be as stipulated and incorporate the stipulation herein by this reference. During 1957 petitioner lived in Washington, D.C., and filed his Federal income tax return for that year with the district director of internal revenue at Baltimore, Maryland. Petitioner is a veteran of World War II and received a medical discharge on December 7, 1944, with 100 per cent disability, service connected. At the time of his discharge petitioner had "a spinal condition, plus a lung condition." From 1944 to 1952 petitioner was treated in Washington, D.C., by W. P. Brownell, a chiropractor. Petitioner was and is of the opinion that Brownell was very successful in giving him comfort and aid by his treatments. In 1952 Brownell gave up his practice as a chiropractor and retired to Sarasota, Florida, where *82 he became active in the educational filed. When Brownell left Washington petitioner went for treatment to another chiropractor who, by reason of his awkward technique, caused an injury to petitioner's neck. Thereupon petitioner consulted another chiropractor, L. DeFord Smith, for treatments for his original complaints and also with regard to the realignment of the bone structure in his neckline. Smith's treatments have continued to the present, but he has been unable to rectify the condition in petitioner's neckline to the latter's satisfaction. Petitioner is of the opinion that Smith does not have the same "technical approach" as Brownell had. In 1954, 1955, and 1956 petitioner drove to Florida. On most of these trips he was accompanied by others who were taking vacations. One of petitioner's purposes in taking these trips was to try to induce Brownell to examine him and advise him "who [he] could go to to gain the same sort of help that [Brownell] gave [petitioner]." Brownell "didn't outright deny [petitioner], but he has been so busy * * * that he hasn't had the opportunity to give [him] any attention." In 1957 petitioner made two trips to Florida, one from January *83 13 to March 8 and the other from November 11 to December 23. He was accompanied on these trips by at least one friend or acquaintance whose purpose was to take a vacation trip. During that year petitioner expended the sum of $813.70 for motel-room rental at Sarasota. Brownell administered no treatment to petitioner in the State of Florida. On the occasion of one of his trips to Florida Brownell examined petitioner. Petitioner continued to take treatments from Smith in Washington. Petitioner maintained no record of his expenditures in connection with his automobile trips to Florida. He averaged 17 miles to the gallon of gasoline, and changed oil every thousand miles, using 6 quarts per change at a cost of 45 cents per quart. He paid no toll charges and did not have any parking expenses. Opinion KERN, Judge: The question in this case is whether petitioner is entitled to deductions on account of expenditures for transportation for medical care pursuant to section 213(e)(1)(A) and (B) of the Internal Revenue Code of 1954[1] in amounts sufficient to make petitioner's allowable itemized deductions exceed the standard deduction allowed by respondent. *84 Respondent contends that expenditures by petitioner for his two trips to Florida in 1957 to see a retired chiropractor, whom petitioner had been unable to interest in his case during 3 preceding years, do not constitute deductible medical expenses, especially since petitioner failed to prove that the chiropractor had ever examined him. Respondent also contends that, even if they constitute deductible medical expenses, petitioner has not proved that they were in amounts which would cause petitioner's allowable itemized deductions to exceed the amount of the standard deduction allowed by respondent. Even though the transcript in this case includes the testimony of only the petitioner, the record is quite confused as to what, if anything, was actually accomplished by petitioner by his trips to Florida in connection with any examination by Brownell. It is clear that Brownell gave him no treatments, and it is also clear that Brownell gave him no treatment or examination during his trips to Florida in 1954, 1955, and 1956. However, there is some rather ambiguous testimony to the effect that Brownell gave petitioner an examination in 1957 and we have so found although with some doubt. *85 The question of whether this examination by a retired chiropractor, obviously made with so much reluctance, can support the deduction of petitioner's traveling expenses to and from Florida as "amounts paid * * * for transportation primarily for and essential to medical care * * *" need not be decided since, even though we assume that they are, petitioner has not proved that the amounts so paid and allowable as such expenses would exceed, if added to petitioner's other allowable itemized deductions, the standard deduction allowed by respondent The only amount of such expenses actually paid, of which we are sure, is the amount stipulated as having been paid for petitioner's board and lodging while staying at a Florida motel. This is not an allow able deduction as a medical expense. Max Carasso, 34 T.C. - (Filed September 30 1960). The only other expenditures specified by petitioner's testimony were for gasoline and oil. He probably had other minor traveling expenses but even by resorting to the rule in Cohan v. Commissioner, 39 F.2d 540, we are unable to approximate an amount representing petitioner's expenditures for one trip to Florida and return which would, if *86 added to petitioner's other allowable itemized deductions, exceed the standard deduction allowed by respondent. Accordingly, Decision will be entered for the respondent. Footnotes
1. SEC 213. MEDICAL, DENTAL, ETC., EXPENSES. (e) Definitions. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or (B) for transportation primarily for and essential to medical care referred to in subparagraph (A).↩